UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10101-MEL |
| | ) | |
| JOSE NETO | ) | |

## REQUEST FOR JURY INSTRUCTIONS BY UNITED STATES

Pursuant to Fed. R. Crim. P. 30, the United States of America requests that the Court give the following jury instructions, in addition to the Court's customary instructions common to criminal cases. The government reserves the right to supplement, modify or withdraw these requested instructions in light of the requests, if any, filed by the defendant and the evidence in the case.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Sabita Singh

_____
GEORGE VIEN
SABITA SINGH
Assistant U.S. Attorneys
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
Ph:  (617) 748-3100
Fx: (617) 748-3954

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)  and paper copies will be sent to those indicated as non registered participants on March 20, 2006.

/s/ Sabita Singh_____
SABITA SINGH

PROPOSED INSTRUCTION 1

<u>Bribery of a Federal Official (18 U.S.C. § 201(b)(1))</u>

Counts 1 through 9 of the Indictment charge that between September 2004 and March 2005, in the District of Massachusetts, Defendant Jose Neto gave, offered, or promised something of value to a public official with the intent to influence an official act.

Section 201 of Title 18 of the United States Code provides, in part, that:

(b) Whoever –

    (1)    directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . with intent – . . . to influence any official act; . . .

shall be guilty of an offense against the United States.

In order to sustain its burden of proof for the crime of giving, offering, or promising a bribe to a public official as charged in Counts 1 through 9 of the Indictment, the government must prove the following three essential elements beyond a reasonable doubt:

One: Defendant Jose Neto gave, offered, or promised something of value as described in the Indictment to an agent of the United States Department of Homeland Security, Immigration and Customs Enforcement;

Two: The agent was, at that time, an official of the United States or was acting on behalf of the United States; and

Three: Defendant Jose Neto made the gift, offer, or promise corruptly with the intent to influence an official act.

---

2 <u>Federal Jury Practice & Instructions</u> § 27.03 (5th ed.) (Giving, Offering, Or Promising A Bribe To A Public Official (18 U.S.C.A. § 201(b)(1)).

PROPOSED INSTRUCTION 2

Inducing Aliens to Reside in the United States Illegally (8 U.S.C. § 1324(a)(1)(A)(iv))

Counts 10 through 32 of the Indictment charge that between November 2004 and March 2005, in the District of Massachusetts, Defendant Jose Neto encouraged aliens to reside in the United States illegally.

Section 1324(a)(1)(A)(iv) of Title 8 of the United States Code provides, in part, that:

(a)(1)(A) Any person who –

(iv)    encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; . . .

is guilty of an offense against the United States.

In order to sustain its burden of proof for the crime of inducing an alien to reside in the United States illegally as charged in Counts 10 through 32 of the Indictment, the government must prove the following two essential elements beyond a reasonable doubt:

One: Defendant Jose Neto encouraged or induced an alien as charged in the Indictment to come to, enter, or reside in the United States in violation of law.

Two: Defendant Jose Neto did so knowing that the alien's coming to, entering or residing in the United States is or will be in violation of law or with reckless disregard of that fact.

The first element of the offense which the government must prove beyond a reasonable doubt is that the defendant encouraged or induced an alien to come to or enter or remain in the United States in violation of law. The term "alien," as used in these instructions, means any person who is not a citizen or national of the United States. "Encourage" means to instigate, convince, help or advise an alien to come to the United States or to stay in this country. To "induce" means to bring about, affect, cause or influence an alien to come to the United States or to stay in this country.

The second element of the offense which the government must prove beyond a reasonable doubt is that the defendant knew that the alien he encouraged or induced would come to or enter or remain in the United States in violation of the law, or that the defendant acted in reckless disregard of that fact.

Whether or not the defendant had this knowledge is a question of fact to be determined by you on the basis of all the evidence.  An act is done knowingly only if it is done purposely and deliberately, and not because of accident, mistake, negligence, or other innocent reason.  If you find that the evidence establishes, beyond a reasonable doubt, that the defendant actually knew of the alien's illegal status, then this element is satisfied.  Even if the evidence does not establish actual knowledge, this element is satisfied if you find that the government has proved, beyond a reasonable doubt, that the defendant acted with reckless disregard of the facts concerning the alien's status.

The phrase "reckless disregard of the facts" means deliberate indifference to facts which, if considered and weighed in a reasonable manner, indicate the highest probability that the alleged alien was in fact an alien and was in the United States unlawfully.

2 <u>Modern Federal Jury Instructions</u>, Instruction 33A-20 to 23 (2005) (Immigration Offenses); 2B <u>Federal Jury Practice & Instructions</u> § 61.10 (5th ed.) ("Alien" - Defined).

PROPOSED INSTRUCTION 3

Harboring Illegal Aliens (8 U.S.C. § 1324(a)(1)(A)(iii))

Counts 33 through 40 of the Indictment charge that at various times prior to and including March 15, 2005, in the District of Massachusetts, Defendant Jose Neto harbored illegal aliens.

Section 1324(a)(1)(A)(iii) of Title 8 of the United States Code provides, in part, that:

(a)(1)(A) Any person who –

> (iii)    knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation

shall be guilty of an offense against the United States.

In order to sustain its burden of proof for the crime of harboring an illegal alien as charged in Counts 33 through 40 of the Indictment, the government must prove the following three essential elements beyond a reasonable doubt:

One: The individuals identified in Counts 33 through 40 of the Indictment, were in the United States in violation of the law; and

Two: Defendant Jose Neto knew, or was in reckless disregard of the fact, that the individuals identified in Counts 33 through 40 of the Indictment were in the United States in violation of the law; and

Three: Defendant Jose Neto knowingly concealed, harbored, shielded from detection or attempted to conceal, harbor or shield from detection the individuals identified in Counts 33 through 40 of the Indictment in any place.

The term "alien," as used in these instructions, means any person who is not a citizen or national of the United States.

The phrase "reckless disregard," as used in these instructions, means that the defendant

deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. A finding beyond a reasonable doubt of an intent of the defendant to avoid knowledge or enlightenment would permit the jury to infer knowledge. Stated another way, a defendant's knowledge of a particular fact may be inferred from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.

It is, of course, entirely up to you as to whether you find any reckless disregard or deliberate closing of the eyes and the inference to be drawn from any such evidence.

You may not infer that a defendant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

The term "to conceal," as used in these instructions means to deliberately hide or to deliberately prevent detection.

2B Federal Jury Practice & Instructions § 61.07-.12 (5th ed.) (Concealment or Harboring of Illegal Alien).

PROPOSED INSTRUCTION 4

<u>Extortionate Extension of Credit (18 U.S.C. § 892)</u>

Count 41 of the Indictment charges that, on or about November 2004, in the District of Massachusetts, Defendant Jose Neto made an extortionate extension of credit.

Section 892 of Title 18 of the United States Code provides, in part, that:

Whoever makes any extortionate extension of credit . . .

shall be guilty of an offense against the United States.

In order to sustain its burden of proof for the crime of making an extortionate extension of credit as charged in Count 41 of the Indictment, the government must prove the following two essential elements beyond a reasonable doubt:

One: Defendant Jose Neto knowingly made an extension of credit to the person identified in the Inditment; and

Two: it was the understanding of Defendant Jose Neto, as the creditor, and the person identified in the Indictment as the debtor, at the time the loan was made, that delay in making repayment or that failure to make repayment could result in the use of violence.

An "extortionate extension of credit" is any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person.

In deciding whether Defendant Jose Neto made an extortionate extension of credit, you may consider whether the evidence in the case proved any or all of the following factors: (1) the debt incurred by the debtor was legally unenforceable, and (2) the annual interest rate on the debt was more than 45%, and (3) the debtor believed, at the time credit was extended, that the defendant had previously used extortionate means to collect a debt or had a reputation for doing so, and (4) the

credit extended to the debtor exceeded $100.

If the government proves all four of these factors beyond a reasonable doubt, then it has provided "prima facie" evidence that an extortionate extension of credit was made.

"Prima facie evidence" means sufficient evidence, unless and until outweighed by other evidence in the case, which leads the jury to a different or contrary conclusion.

The term "understanding" as used in this statute means comprehension rather than agreement. This "understanding" or comprehension does not need to be based upon explicit threats by Defendant Jose Neto. This "understanding" or comprehension may be inferred from the defendant's reputation for collection or inferred from specific acts of the defendant in the collection or extensions of credit which are known to the debtor Jose Neto.

The term "an extortionate means" is any method which involves the use, or an express or implicit threat of use, of violence or ther criminal means to cause harm to the person, reputation, or property of any person.

The term "creditor," with reference to any given extension of credit, refers to any person making that extension of credit, or to any person claiming by, under, or through any person making that extension of credit. The term "creditor" includes a person who makes a loan.

The term "debtor," with reference to any given extension of credit, refers to any person to whom that extension of credit is made, or to any person who guarantees the repayment of that extension of credit, or in any manner undertakes to indemnify the creditor against loss resulting from the failure of any person to whom that extension of credit is made to repay the same. The term "debtor" includes a person who borrows or receives money, or who receives something else of value, for which he or she is expected to make repayment. As used in these instructions, someone who guarantees the repayment of a loan may also be considered to be a "debtor."

The phrase "to extend credit" means to make or renew any loan, or to enter into any

agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred. "To extend credit" or "to make an extension of credit" means to make a loan or to, in any way, defer or postpone the payment of any type of debt or obligation.

"The repayment of any extension of credit" includes the repayment, satisfaction, or discharge in whole or in part of any debt or claim, acknowledged or disputed, valid or invalid, resulting from or in connection with that extension of credit. The phrase "the repayment of any extension of credit" includes the repayment or partial repayment, of any kind, of any debt or obligation.

The government need not prove that any threat to use force or violence was explicit or expressed outright in so many words. Implicit threats to use force or violence are also prohibited. If you find that under all of the circumstances shown by the evidence received in this case that an ordinary and reasonable person would have been put in fear of immediate bodily or economic harm, or future bodily or economic harm, from anything that Defendant Jose Neto did or said to him, then you may find that Defendant Jose Neto did use extortionate means to instill fear within the meaning of these instructions.

A threat includes the use of words to another which indicate to that person that failure to comply with the demands of the person making the threats will result in physical or economic harm to the person or his family.

Actual fear on the part of the debtor or borrower is not an element of the offense charged in Count 41 of the Indictment. It is not necessary, therefore, that the government prove that the victim of any collection of extensions of credit was actually placed in fear of immediate bodily harm or future bodily harm or of other criminal means.

The government must prove beyond a reasonable doubt, however, that Defendant Jose Neto planned and intended that the debtor or borrower would understand the possibility that harmful

consequences would follow from his delay in repaying or failure to repay the extension of credit or

loan or debt.

2 <u>Federal Jury Practice & Instructions</u> § 37.01 - 17 (5th ed.) (Extortionate Credit Transactions).

PROPOSED INSTRUCTION 5

<u>Hiring and Employing Unauthorized Aliens (8 U.S.C. § 1324a(f)(1))</u>

Count 42 of the Indictment charges that, on or about March 2004 through March 2005, in the District of Massachusetts, Defendant Jose Neto engaged in a pattern and practice of hiring and employing unauthorized aliens.

Section 1324a of Title 8 of the United States Code provides, in part, that:

(f)(1)    Any person or entity which engages in a pattern or practice of violations of . . . this section [regarding hiring and employing unauthorized aliens] . . .

shall be guilty of an offense against the United States.

In order to sustain its burden of proof for the crime of hiring and employing unauthorized aliens as charged in Count 42 of the Indictment, the government must prove the following two essential elements beyond a reasonable doubt:

One: Defendant Jose Neto engaged in a pattern or practice of hiring or employing aliens unauthorized for employment in the United States; and

Two: Defendant Jose Neto acted knowingly.

The term "unauthorized alien" means that the alien is not an alien lawfully admitted for permanent residence or otherwise authorized to be employed in the United States.

The "knowingly" requirement of the statute requires proof that the defendant did in fact know that the employees were unauthorized to be in the United States or to be working in the United States, and with that knowledge, hired and employed unauthorized aliens.

The term "pattern or practice" means regular, repeated and intentional activities, but does not include isolated, sporadic or accidental acts.

18 U.S.C. § 1324a(h)(3) (definition of unauthorized alien).  See <u>United States</u> v. <u>Fragale</u>, 1999 WL 816254, *6 (E.D. Pa. Aug. 17, 1999); <u>United States</u> v. <u>Baftriri</u>, 2000 WL 34030830 (N.D. Iowa, Apr. 11, 2000); H.R. Rep. No. 99-682, Part 3, 99th Cong., 2d Sess. (1986), p. 59.  See 8 C.F.R. 27a.1(k).