UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|                    |   |                       |
|--------------------|---|-----------------------|
| UNITED STATES      | ) |                       |
|                    | ) |                       |
| v.                 | ) | Crim. No. 05-10101 MEL |
|                    | ) |                       |
| JOSE NETO,         | ) |                       |
|                    | ) |                       |
| Defendant.         | ) |                       |

UNITED STATES' RESPONSE TO DEFENDANT'S PROPOSED JURY INSTRUCTION

In his request for jury instructions, defendant cites Massachusetts' anti-discrimination statute, which contains the following provision:

It shall be an unlawful practice:

* * *

7. For the owner, lessee, sublessee, real estate broker, assignee or managing agent of other covered housing accommodations or of land intended for the erection of any housing accommodation included under subsection 10, 11, 12, or 13 of section one, or other person having the right of ownership or possession or right to rent or lease or sell, or negotiate for the sale or lease of such land or accommodations, or any agent or employee of such a person or any organization of unit owners in a condominium or housing cooperative: (a) to refuse to rent or lease or sell or negotiate for sale or lease or otherwise to deny or withhold from any person or group of persons such accommodations or land because of race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, age, genetic information, ancestry, or marital status, veteran status or membership in the armed forces, blindness, hearing impairment, or because such person possesses a trained dog guide as a consequence of blindness or hearing impairment or other handicap of such person or persons; (b) to discriminate against any person because of his race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, age, genetic information, ancestry, or marital status, veteran status or membership in the armed services, blindness, or hearing impairment or other handicap, or because such person possesses a trained dog guide as a consequence of blindness or hearing impairment in the terms, conditions or privileges of such accommodations or land or the acquisition thereof, or in the furnishing of facilities and services in the connection therewith or (c) to cause to be made any written or oral inquiry or record concerning the

> race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, age, genetic information, ancestry, marital status, veteran status or membership in the armed services, blindness, hearing impairment or other handicap or because such person possesses a trained dog guide as a consequence of blindness or hearing impairment, of the person seeking to rent or lease or buy any such accommodation or land . . . .

Mass. Gen. L. c. 151B § 4.

This statute, which makes no mention of alienage, let alone any mention of status as an illegal alien, is plainly inapposite. There is no reason to instruct the jury on a state statute that has no bearing on the charges at issue in this federal criminal case.

There is nothing to suggest that the Massachusetts statute could or would be interpreted as conflating the term "national origin" with "status as an illegal" alien. Indeed, even if such an interpretation could plausibly be limned from the text of the statute, adopting such a reading would run afoul of the principle that, in statutory interpretation, ambiguities are to be resolved in favor of a interpretation that does not render a statute unconstitutional. See generally Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council, 485 U.S. 568, 575 (1988) ("Where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." ).

To the extent that the Massachusetts's law's reference to "national origin" could conceivably be interpreted to include status as an illegal immigrant, that statute would be invalid, as an interference with the pre-eminence of Federal law in setting immigration policy and in criminalizing the employment and harboring of illegal aliens. "For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government." Mathews v.

Diaz, 426 U.S. 67, 81 (1976).  Accordingly, state laws that conflict with national immigration policy are without force:

> The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. See Hines v. Davidowitz, 312 U.S. 52, 66, 61 S.Ct. 399, 403, 85 L.Ed. 581. Under the Constitution the states are granted no such powers; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states. State laws which impose discriminatory burdens upon the entrance or residence of aliens lawfully within the United States conflict with this constitutionally derived federal power to regulate immigration, and have accordingly been held invalid.

Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 419 (1948) (emphasis supplied) (quoted in DeCanas v. Bica, 424 U.S. 351, 358 (1976)).  See also National Foreign Trade Council v. Natsios, 181 F.3d 38, 55 (1st Cir. 1999) (noting federal pre-emption of local anti-discrimination laws where enforcement of state regultations would impair effective exercise of national foreign policy) (citing New York Times Co. v. City of New York Commission on Human Rights, 41 N.Y.2d 345, 393 N.Y.S.2d 312, 361 N.E.2d 963 (1977)).

It should further be noted that, even if there were some claim that the defendant was in fact aware of the Massachusetts statute and could claim – on the basis of such awareness – that his awareness of that statute vitiated the willfulness of his actions, there is no willfulness requirement in the statute charged in this case.  The state of mind that the United States is required to prove is knowledge and/or reckless disregard, nothing more.

### Harboring

Defendant also seeks to modify the proposed jury instruction on harboring.

> The American Heritage Dictionary defines "harbor" as follows:
>
> TRANSITIVE VERB:  Inflected forms: har·bored, har·bor·ing, har·bors
> 1. To give shelter to: harbor refugees; harbor a fugitive.  **2.** To provide a place, home, or habitat for: a basement that harbors a maze of pipes; streams that harbor trout and bass.  **3.** To entertain or nourish (a specified thought or feeling): harbor a grudge.

American Heritage Dictionary of the English Language (2000).

Defendant suggests, however, that the Court should ignore the normal usage of the term and should include an element of clandestine activity or "secrecy."  His primary authority is a reference to Black's Law Dictionary, in an out-of-date edition, which apparently includes – in several of its definitions of the term – references to harboring as connoting a "clandestine" or "improper" activity.  Obviously the term "harboring," when it refers to harboring fugitives or aliens, connotes impropriety; it is a crime.  But what makes harboring illegal aliens (or fugitives) a crime is not the activity per se (providing shelter), but the mens rea associated with the activity.  The crime is in knowingly providing shelter to an illegal alien.  Adding an additional element of secrecy would render superfluous the separate provisions in the statute that also make it a crime to "conceal" or to "shield from detection" an illegal alien.  Such an approach to statutory construction is untenable.  See Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552,

562 (1990) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." ).

                                                  Respectfully submitted,

                                                  MICHAEL J. SULLIVAN
                                                  United States Attorney

dated: May 8, 2006

                                        By: /s/ Paul G. Levenson
                                               PAUL G. LEVENSON
                                               SABITA SINGH
                                               Assistant U.S. Attorneys
                                             John Joseph Moakley United States Courthouse
                                             1 Courthouse Way, Suite 9200
                                             Boston, MA 02210
                                             (617) 748-3147

## CERTIFICATE OF SERVICE

     I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

dated: May 8, 2006

                                               /s/ Paul G. Levenson
                                               PAUL G. LEVENSON