UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **UNITED STATES** )<br>)<br>v. )<br>)<br>**JOSE NETO** )<br>) | Crim. No. 05-10101-MEL |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL AND IN OPPOSITION TO THE UNITED STATES' MOTION FOR ISSUANCE OF A PRELIMINARY ORDER OF FORFEITURE

At the close of trial, the defendant, Jose Neto, moved for a judgment of acquittal on all charges against him. The motion was reserved for later resolution. Defendant submits this memorandum in support of that motion.

### I.   COUNT 33 AND THE FORFEITURE ORDER

Only two counts of the Indictment, counts 33 and 34, charged defendant with harboring an alien in the multi-family residence at 27, 29, 31, and 33 Blaine Street, Alston, (the "Real Property") which the government seeks to forfeit. The jury acquitted defendant of Count 34. The only remaining count to sustain forfeiture is Count 33 of the Superseding Indictment, and there was insufficient evidence for the jury to have reasonably convicted on this count. The verdict on this count must be set aside, and the forfeiture denied.

Count 33 alleges that:

> On or about various dates prior to and including March 15, 2005 at Allston in the District of Massachusetts and elsewhere, [defendant], knowing and or in reckless disregard of the fact that an alien had come to, entered, and remained in the United States in violation of law, did conceal, harbor, and shield from detection, and did attempt to conceal, harbor, and shield from detection, such alien in a building; to wit, [the Real Property].

The only evidence with respect to this count came from the testimony of Roberto Veira, the alien

alleged to have been so harbored.

Veira testified that he was in the United States illegally. (Transcript of the Testimony of Roberto Candido Veira, May 9, 2006 (hereafter, "Transcript"), p. 4). Veira first came to the United States in 2000. (Transcript, p. 3). He lived at other locations for a little over two years, until moving to 27 Blaine Street, based on a newspaper advertisement. (Transcript, pp. 4-5). The only conversation he had with defendant before moving in was the price and the fact that he needed to move the next day. (Transcript, pp. 7-8). He lived at 27 Blaine Street for approximately two years, and 29 Blaine Street for approximately another year. (Transcript, p. 10). Veira testified that the first time defendant enquired as to his immigration status was a year and a half prior to trial, or approximately two years after Veira moved in to the Real Property, when defendant believed he had access to documents to sell to Veira if he was illegally in the country. (Transcript pp. 13-14). There was no allegation that defendant's behavior changed once he learned this information. This evidence was insufficient for any rational fact finder to determine beyond a reasonable doubt that the defendant was guilty on Count 33. *See United States v. McCormack*, 371 F.3d 22, 27 (1st Cir. 2004) (Rule 29 standard).

The evidence includes nothing to indicate that defendant "did conceal" or "shield from detection" Veira. The only question is whether the evidence proves defendant, knowingly or in reckless disregard of Veira's status as an illegal alien, harbored Veira.[1] This question turns on the meaning of the word "harbor" in the context of the statute. Defendant did not "harbor" Veira by failing to evict him in the few months between learning that Veira was illegally in the country and

---

[1] Defendant notes that in order to prove the count charged in the superseding indictment, the government had to prove that defendant "did conceal, harbor, and shield from detection" (emphasis added) Veira. The statute, however, presents these in the alternative. 8 U.S.C. § 1324 (a)(1)(A)(iii).

the time of defendant's arrest in March 2005.

Statutory interpretation — guided by the principle that the aim is to effectuate the intent of Congress and not to second-guess it — must start with the language of the statute. *Bailey v. United States*, 516 U.S. 137, 144-145 (1995). "The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). Congress has not defined the word harbor in the context of this statute. Nor has the First Circuit, or the Supreme Court.

Since the word "harbor" is not defined in the statute, it must be given its "ordinary and natural meaning," *Bailey*, 516 U.S., at 145, "in light of the terms that surround it[,]" *Smith v. United States*, 508 U.S. 223, 229 (1993). "[T]he meaning of statutory language, plain or not, depends on context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (citing *King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991)). It is undisputed that at least one ordinary meaning of "harbor" includes a clandestine element, and given that the surrounding words are "conceal" and "shield from detection," it is natural and proper to interpret harbor to include a similar clandestine element to the other words used in the statute. In the first case to interpret the word "harbor" in the context of harboring illegal aliens, the Sixth Circuit interpreted the word "harbor" to mean "to clandestinely shelter, succor, and protect" improperly admitted aliens. *Susnjar v. United States*, 27 F.2d 223, 224 (6th Cir. 1928). Nothing in the evidence indicates that there was anything clandestine or inappropriate about defendant's actions, and an order of not guilty of Count 33 should be entered.

Even assuming, *arguendo*, that this argument does not definitively establish that "harbor"

in the statute should be given a meaning that includes a clandestine element, "[a]t the very least, it may be said that the issue is subject to some doubt." *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 284-285 (1978). In these circumstances, "where text, structure, and history fail to establish that the Government's position is unambiguously correct," *United States v. Granderson*, 511 U.S. 39, 54 (1994), the rule of lenity applies and requires that the ambiguity must be resolved in the defendant's favor. *Id.* at 1267; *Simpson v. United States*, 435 U.S. 6, 14 (1978); *Adamo Wrecking Co.*, 434 U.S. at 284-285; *United States v. Bass*, 404 U.S. 336, 347 (1971); *Rewis v. United States*, 401 U.S. 808, 812 (1971). As the Court said in *Ladner v. United States*, 358 U.S. 169 (1958), "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." 358 U.S. 169, 178 (1958). *Id.*, at 178.

      The government, seeking to establish an interpretation of "harbor" under which their evidence is sufficient for a conviction, has relied on opinions from the Second and Ninth Circuits, which hold that harboring need not be clandestine, but neither of these Circuits' precedents provide support to the government herein. Although the Second Circuit has deprecated the interpretation that "harbor" requires a *clandestine* sheltering of the alien, *United States v. Lopez*, 521 F.2d 437, 440 n.3 (2nd Cir. 1975), it went on to hold that harboring is more than merely sheltering, but must substantially facilitate the alien's remaining in the United States illegally. *Id.*, at 441. The Second Circuit has subsequently looked for evidence such as preventing detection by the authorities to support a conviction for harboring. *United States v. Kim*, 193 F.3d 567, 574-575 (2nd Cir. 1999). There is no evidence herein that defendant's actions substantially

facilitated Veila's presence in the United States, so those actions do not constitute "harboring" under the Second Circuit's test. Veila was in the country two years prior to ever meeting the defendant, and had previously secured two apartments. Clearly, Veira would simply have found other lodging if defendant had required him to move out of the Real Property.

Nor does the Ninth Circuit's precedent provide the government with solid support for its position. In the case cited by the government, *United States v. Margarita Acosta de Evans*, 531 F.2d 428 (9th Cir. 1976), the Ninth Circuit, comparing the holdings in *Susnjar* and *Lopez*, determined that it would not require "harbor" to have a clandestine element, while recognizing that some "standard definitions" of harbor do contain that element. *Id.*, at 430. Even so, the Ninth Circuit emphasized that it was reaching this decision in order to forward the statutes goal of preventing aliens from remaining in the United States illegally, *id.*, implicitly adopting the Second Circuit's interpretation that harboring must substantially facilitate the alien remaining in the country. The facts of *de Evans* also suggest that facilitation is required. The alien therein was a relative of de Evans, known by her to be illegally in the country, who had contacted de Evans on arrival in the country and moved into de Evans' apartment, where she had been living for two months at the time of the arrest.[2] *Id.*, at 429. Herein, where the evidence established Veira was in the country, supporting himself, and able to find housing without any intervention or assistance from defendant, and where defendant was not even aware of Veira's status until he had been living in the Real Property for two years, the evidence was insufficient to find harboring, and a verdict of Not Guilty on Count 33 of the superseding indictment must be entered.

---

[2] De Evans was acquitted of charges of harboring with respect to four other illegal aliens who were present in her apartment but not living there at the time of the arrest, so the court did not consider whether such transient, unrelated aliens were "harbored" within the meaning of the statute. *Id.*, at 429-430.

Because Count 33 was unsupported by the evidence and a verdict of not guilty must be entered, the requested forfeiture order for the Real Property also fails. The jury only found the Real Property had been used to facilitate this count, not any of the others on which the jury convicted the defendant. Accordingly, with the failure of Count 33, the government has not established that the Real Property is subject to forfeit under 21 U.S.C. § 853. The United States' Motion for Issuance of a Preliminary Order of Forfeiture must be denied.

## II.   THE OTHER COUNTS

Defendant relies upon the oral argument made with the initial submission of his Motion for a Judgment of Acquittal with regard to the other counts at issue herein.

JOSE NETO
By his attorney,

/s/ *John H. Cunha Jr.*
John H. Cunha Jr.
B.B.O. No. 108580
CUNHA & HOLCOMB, P.C.
One State Street, Suite 500
Boston, MA 02109-3507
617-523-4300

Dated: June 18, 2006                               H:\Word\Crim\Neto\Rule 29 Memo.wpd

CERTIFICATE OF SERVICE

I certify that on this date, May 24, 2006, a copy of the foregoing document was served via electronic filing upon AUSA Sabita Singh, U.S. Attorney, 1 Courthouse Way, Boston, MA 02210.

/s/ *John H. Cunha Jr.*
John H. Cunha Jr.