UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10101-MEL |
| | ) | |
| JOSE NETO | ) | |

**OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

The defendant has moved, pursuant to Fed. R. Crim. P. 29, for a judgment of acquittal as to Count 33 of the Indictment, which charged him with harboring Roberto Candido Vieira ("Vieira"), an alien who was in the United States illegally, in the defendant's multi-family home at 27-33 Blaine Street in Allston, Massachusetts, in violation of 8 U.S.C. §1324(a)(1)(A)(iii). The motion should be denied because the defendant has failed to establish that, viewing the evidence in the light most favorable to the verdict of guilt, no reasonable fact finder could have found the defendant guilty beyond a reasonable doubt. See United States v. O'Shea, 426 F.3d 475, 479 (1st Cir. 2006) (standard of review on Rule 29 motion).

To prove the charge of harboring as laid out in Count 33 of the Indictment (Count 1 of the redacted Indictment submitted to the jury), the government was required to establish three elements: (1) that Vieira was in the United States illegally; (2) that the defendant knew, or was in reckless disregard of the fact, that Vieira was in the United States illegally; and (3) that the defendant knowingly concealed, harbored or shielded from detection Vieira, or that the defendant attempted to do so.[1]  2B Federal Jury Practice & Instructions §61.07-§61.12 (5th ed.) (Concealment

---

[1]The defendant argues that, because the indictment charged that he "did conceal, harbor **and** shield from detection," (emphasis added) the government was required to prove all three. See Defendant's Memorandum at 2 n.1.  Contrary to the defendant's contention, charges framed in the conjunctive may be proved in the disjunctive.  Turner v. United States, 396 U.S. 398, 420 & n.42 (1970).  See United States v. Nieves-Burgos, 62 F.3d 431, 434-436 (1st Cir. 1995) (discussing Turner as settled law).

or Harboring of Illegal Alien).  There is no dispute that the government met its burden with respect to the first element, as Vieira testified at trial that he entered the United States illegally.  Trial Tr. (05/09/2006) at 4.  See Defendant's Memorandum at 2.

The evidence was also sufficient on the second element as to the defendant's knowledge of Vieira's status.  Vieira testified that the defendant offered to sell him immigration documents while he was living in the Allston property owned by the defendant.   Trial Tr.  (05/09/2006) at 14.  The defendant nevertheless argues that this evidence establishes only that he first learned of Vieira's status about two years after Vieira moved into the Allston property, when he inquired as to Vieira's status in connection with his attempt to sell Vieira immigration documents.   Defendant's Memorandum at 2.  Contrary to the defendant's assessment, the jury could have inferred that the defendant, himself an illegal alien, would not have approached Vieira to sell him immigration documents unless he believed that Vieira was also an illegal alien.  See United States v. O'Shea, 426 F.3d at 479 (in review of Rule 29 determinations, "no premium is placed upon direct as opposed to circumstantial evidence; both types of proof can adequately ground a conviction").  Thus, the jury was free to infer that the defendant must have believed that Vieira was an illegal alien even before he approached him.  Moreover, there was ample evidence that the defendant had knowingly harbored numerous other illegal aliens by employing them and providing them housing, thus supporting the inference that the defendant acted with knowledge, or at least reckless disregard, of Vieira's status.  See United States v. Herrera-Medina, 609 F.2d 376, 379-380 (9th Cir. 1979) (properly introduced evidence of other acts of transporting illegal aliens relevant and probative of defendant's knowledge as to charged act of transporting illegal aliens).

On the third element, whether the defendant knowingly harbored Vieira, the evidence was clear.  Vieira spoke directly with the defendant in order to rent the property from him.  Trial Tr. (05/09/2006) at 7.  In fact, Vieira lived in two separate units of the property – with the defendant

living on the same property, over the course of about two years.  Trial Tr.  (05/09/2006)  at 10-11.

By giving shelter to Vieira, the defendant harbored him within the meaning of 8 U.S.C.

§1324(a)(1)(A)(iii).  See United States v. Acosta de Evans, 531 F.2d 428, 430 (9th Cir. 1976) (term

"harbor" within 8 U.S.C. §1324(a)(1)(A)(iii) should be construed to mean "afford shelter to");

United States v. Lopez, 521 F.2d 437, 441 (2nd Cir. 1975) (primary meaning of "harbor" is "to give

shelter and refuge to").  See also United States v. Balderas, 91 Fed. Appx. 354 (5th Cir. 2004)

(following Acosta de Evans and Lopez).

The defendant nevertheless argues that the term "harbor" must be interpreted to include a

clandestine element. Defendant's Memorandum at 3.  The defendant's act of offering to sell illegally

obtained immigration documents to Vieira certainly meets this "clandestine" element.  There can

be few other actions which are more illustrative of clandestine harboring than providing false

identification documents to enable illegal aliens to disguise themselves as legal residents.  In any

event, the term "harboring" does not require such a clandestine element.

The defendant points to Susnjar v. United States, 27 F.2d 223, 224 (6th Cir. 1928), in support

of his argument that the term "harbor" within the context of 8 U.S.C. §1324(a)(1)(A)(iii) implies

a clandestine element.  Defendant's Memorandum at 3.  Yet, the court in Susnjar was not called

upon to determine whether the term "harbor" included a clandestine element; it simply declared,

without citation, that the "natural meaning of the word 'harbor' [was] to clandestinely shelter,

succor, and protect improperly admitted aliens."  Susnjar, supra, at 224.  In addition, Susnjar was

decided before the statute was amended to provide criminal penalties for harboring and before it

was amended to its present form, prohibiting concealing, harboring and shielding from detection.

Lopez, 521 F.2d at 439-440 (reviewing legislative history of statute). See Acosta de Evans, 531 F.2d

at 430 (questioning vitality of Susnjar, given revision of statute).

By contrast, the Ninth Circuit in <u>Acosta de Evans</u> applied standard rules of statutory construction by first analyzing the plain meaning of the term "harbor" and then reviewing the legislative history of the statute to discern a meaning that would be consistent with the statutory aims. <u>Id</u>. <u>See</u> <u>United States</u> v. <u>Councilman</u>, 418 F.3d 67, 72-76 (1ˢᵗ Cir. 2005) (statutory analysis begins with plain meaning of text, aided by legislative history to resolve any ambiguities). Not only did the court find that the primary meaning of the term meant "simple sheltering," but it also determined that giving the term "harbor" the meaning "to provide shelter to" would best effectuate the purpose of the statute. <u>Acosta de Evans</u>, 531 F.2d at 430. Likewise, the Second Circuit in <u>Lopez</u> also noted that the primary meaning of the term "harbor" was "to give shelter or refuge to" and that the legislative history indicated that the term "harbor" was intended to encompass conduct tending substantially to facilitate an alien's remaining in the United States illegally, which in that case included providing shelter. <u>Id</u>. at 441.

Relying on <u>United States</u> v. <u>Kim</u>, 193 F.3d 567 (2ⁿᵈ Cir. 1999), the defendant argues that the Second Circuit has subsequently looked for more than simple sheltering to finding harboring. Defendant's Memorandum at 4. <u>Kim</u>, however, was not a sheltering case; rather, the defendant in that case employed an illegal alien. <u>Id</u>. at 569-571. <u>Kim</u> in no way provides support for the proposition that more than sheltering is required for a conviction on a charge of harboring. While the Second Circuit has held that the term "harboring" encompasses conduct that substantially facilitates an alien's remaining in the United States illegally, <u>Lopez</u>, 521 F.2d at 441, the act of providing shelter squarely falls within this proscribed conduct. <u>See</u> <u>United States</u> v. <u>Balderas</u>, 91 Fed. Appx. 354, **1 (5ᵗʰ Cir. 2004) "Because affording shelter to an illegal alien is conduct which **by its nature** tends to substantially facilitate the alien's remaining in the United States illegally, providing shelter to illegal aliens constitutes harboring illegal aliens under 8 U.S.C. §1324(a)(1)(A)(iii)") (emphasis added).

Finally, the defendant argues that the rule of lenity should be applied to construe the term "harbor" in his favor. Defendant's Memorandum at 4. Under the rule of lenity, grievous ambiguity in a penal statute is resolved in the defendant's favor. United States v. Councilman, 418 F.3d at 83. The simple existence of some statutory ambiguity is not sufficient to warrant application of the rule. Id. Rather, the rule applies only if there is a **grievous** ambiguity or uncertainty in the statute. Id. More specifically, lenity applies only if, "after seizing everything from which aid can be derived, [a court] can make no more than a guess as to what Congress intended." Id., quoting Reno v. Koray, 515 U.S. 50, 65 (1995). The rule is unavailable if the purported ambiguity can be resolved through normal methods of statutory construction. Councilman, 418 F.3d at 83, citing to United States v. Balint, 201 F.3d 928, 935 (7th Cir. 2000). Given that at least three circuits have managed to discern the meaning of the term "harbor" within the statute by reference to standard rules of statutory construction, the defendant cannot maintain that there is grievous ambiguity, sufficient to invoke the rule of lenity.

For the foregoing reasons, this Court should deny the defendant's motion for judgment of acquittal.

<div style="margin-left: 40%;">

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Sabita Singh

_____

PAUL G. LEVENSON
SABITA SINGH
Assistant U.S. Attorneys
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
Ph: (617) 748-3100
Fx: (617) 748-3954

</div>

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 29, 2006.

/s/ Sabita Singh

SABITA SINGH