```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| UNITED STATES, | ) <br> ) <br> ) |
| v. | )    05-CR-10101-MEL <br> ) |
| JOSE NETO, <br>     Defendant. | ) <br> ) <br> ) |

MEMORANDUM AND ORDER

LASKER, D. J.

On May 10, 2006, following a jury trial, Jose Neto ("Neto") was convicted of six counts of harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). Before the jury returned its verdict, Neto moved for a judgment of acquittal on all counts. At that time, I reserved decision on the motion. Neto now renews his motion as to all six counts but focuses his argument on Count I, which charged him with harboring Roberto Candido Veira ("Veira"). For the reasons outlined below, the defendant's motion is now DENIED.

I. Background

At trial, the evidence against Neto came principally from the testimony of Veira himself. Veira testified that he entered the United States illegally in 2000. In 2002, responding to a newspaper advertisement, Veira rented an apartment owned by Neto located at 27 Blaine Street, Allston, Massachusetts. After

1

living in the apartment for two years, Veira moved to 29 Blaine Street, an apartment that Neto also owned. Veira lived in that apartment for approximately one year. Throughout the three years that Veira lived at 27 and 29 Blaine Street, Neto lived in the adjacent apartment, 33 Blaine Street. Finally, Veira testified that approximately a year and a half into his stay at 27 Blaine Street, Neto approached Veira about his immigration status. When Veira informed Neto that he was not "a legal individual here," Neto offered to sell Veira documents to hide his illegal status.

## II. Neto's Motion for Judgment of Acquittal

Section 1324 proscribes the conduct of any individual who:

> [K]nowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation.

8 U.S.C. § 1324(a)(1)(A)(iii). Neto argues that a reasonable jury could not have convicted him of "harboring" Veira because Neto did not clandestinely shelter Veira. See Susnjar v. United States, 27 F.2d 223, 224 (6th Cir. 1928). Neto asserts that because 8 U.S.C. § 1324 does not define the word "harbor," that term must be construed in accordance with its ordinary meaning, which Neto contends includes a clandestine element. Neto argues that merely renting an apartment clearly does not fall within the statute's proscription.

2

Moreover, even assuming that the ordinary meaning of "harbor" does not include a clandestine element, Neto asserts that, "[a]t the very least, it may be said that the issue is subject to some doubt." Adamo Wrecking Co. v. United States, 434 U.S. 275, 284-85 (1978). Thus, because of this ambiguity, the rule of lenity requires that the ambiguity be resolved in Neto's favor. See id.; Simpson v. United States, 435 U.S. 6, 14 (1978); Rewis v. United States, 401 U.S. 808, 812 (1971); United States v. Bass, 404 U.S. 336, 347 (1971). Accordingly, Neto contends that "harbor" must be interpreted to signify clandestine sheltering.

Finally, while acknowledging that some courts have interpreted "harbor" not to include a clandestine element, Neto argues that to fall within the proscription of the statute, at the very least, a defendant's conduct must "substantially facilitate" the alien's remaining in the United States illegally. See United States v. Kim, 193 F.3d 567, 574-75 (2nd Cir. 1999). Neto contends the evidence of his conduct did not meet this standard.

### III. Government's Opposition

The government argues that the term "harbor" is unambiguous and that by giving Veira shelter knowing that he was not entitled to it, Neto harbored him within the meaning of 8 U.S.C. § 1324(a)(1)(A)(iii). See United States v. Acosta de

3

Evans, 531 F.2d 428, 430 (9th Cir. 1976); <u>United States v. Lopez</u>, 521 F.2d 437, 441 (2nd Cir. 1975).

Moreover, the government asserts that the rule of lenity is inapplicable because the traditional methods of statutory construction are sufficient to interpret the word "harbor." <u>See</u> <u>United States v. Councilman</u>, 418 F.3d 67, 83 (1st Cir. 2005).

Finally, the government argues that Neto's reliance on <u>United States v. Kim</u> is misplaced because <u>Kim</u> was not a sheltering case. <u>See</u> 193 F.3d at 569-71. Even so, the government asserts that renting an apartment is sufficient to have substantially facilitated Veira's remaining in the United States illegally.

### IV. Analysis

Section 1324 criminalizes the conduct of any person who:

> [K]nowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation.

8 U.S.C. § 1324(a)(1)(A)(iii). Accordingly, the government was required to prove three elements at trial: (1) that Veira was in the United States illegally; (2) that Neto knew, or was in reckless disregard of the fact, that Veira was in the United States illegally; and (3) that Neto "harbored" Veira, or

4

attempted to do so.  There is no dispute that the government met its burden as to the first two elements.  Rather, the question in this case is whether Neto's conduct constituted "harboring" as that term is used in 8 U.S.C. § 1324(a)(1)(A)(iii).

Section 1324 nowhere defines the word "harbor."  However, the ordinary meaning of the word – confirmed by the statute's purpose and structure – is broad enough to encompass the conduct of which Neto was convicted.  Rather than requiring a clandestine element, the primary meaning of the word "harbor" is "to give shelter or refuge to."  Merriam-Webster's Collegiate Dictionary 567 (11th ed. 2003); see also Acosta de Evans, 531 F.2d at 430 (construing "harbor" to mean "afford shelter to"); Lopez, 521 F.2d at 441 (interpreting "harbor" to mean "to give shelter and refuge to").  This meaning is consistent with the purpose of the statute, which seeks both to prevent unauthorized aliens from entering the country as well as to prevent unauthorized aliens already in the country from remaining here illegally.  See Acosta de Evans, 531 F.2d at 430 n.4.  Conversely, interpreting "harbor" to require a clandestine element would render superfluous the other provisions of the statute which criminalize conduct that "conceals" or "shields from detection" an alien illegally in the United States.  8 U.S.C. § 1324(a)(1)(A)(iii); see United States v. Holmquist, 36 F.3d 154, 160 (1st Cir. 1994) (counseling that "no construction

5

should be adopted which would render statutory words or phrases meaningless, redundant or superfluous")(internal citation and quotation marks omitted).

Moreover, Neto's invocation of rule of lenity is unpersuasive. Because most statutes contain some degree of ambiguity, "[t]he simple existence of some statutory ambiguity . . . is not sufficient to warrant application" of the rule of lenity. Muscarello v. United States, 524 U.S. 125, 138-39 (1998). Rather, the rule is applicable only in cases of grievous ambiguity where a Court "can make no more than a guess as to what Congress intended." See Councilman, 418 F.3d at 83 (quoting Reno v. Koray, 505 U.S. 50, 65 (1995)). Here – as outlined above – the ordinary canons of statutory construction are more than sufficient to interpret the term "harbor." Thus, the rule of lenity is inapplicable. See id.

Accordingly, a reasonable fact finder could have concluded that Neto "harbored" Veira by renting him an apartment and providing him with shelter in spite of Neto's knowledge that Veira was in the country unlawfully. Moreover, even assuming the statute required a clandestine element, Veira testified that Neto offered to sell him immigration documents to hide his illegal status, testimony from which a reasonable fact finder could have inferred a clandestine element.

Lastly, even assuming "harboring" requires conduct

6

tending "substantially to facilitate" an alien's remaining in the United States illegally, Neto's conduct satisfies this standard. See Kim 193 F.3d at 574.  Indeed, the Kim Court acknowledged that providing housing was one method of substantially facilitating an alien's unlawful presence in the United States.  Id. (citing Lopez, 521 F.2d at 440-41).  Moreover, as the Fifth Circuit recognized, "affording shelter to an illegal alien is conduct which by its nature tends to substantially facilitate the alien's remaining in United States illegally." United States v. Balderas, 91 F.App'x 354, 354 (5th Cir. 2004).

    Accordingly, the motion for a judgment of acquittal is DENIED as to all counts.

    It is so ordered.


Dated:     July 20, 2006
           Boston, Massachusetts        /s/ Morris E. Lasker
                                             U.S.D.J.