UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 05-10101 MEL |
| JOSE NETO, | ) ) ) | |
| defendant. | ) ) | |

UNITED STATES' OPPOSITION TO MOTION TO AMEND
JUDGMENT AND ORDER OF FORFEITURE

The United States, by its undersigned counsel, hereby opposes defendant Neto's Motion to Amend Judgment and Order of Forfeiture to Include Only 27-29 Blaine Street (hereinafter "Motion to Amend").  As discussed below, the motion is without merit.  The property at 27-33 Blaine Street consists of a single building which has been under unitary ownership for years.

By oral motion at Sentencing, and in a written motion filed after Sentencing, Neto seeks to stave off forfeiture of part of the property that the jury has found to be forfeitable and that this Court has ordered forfeited in its Final Order of Forfeiture, dated January 18, 2007.  In his Motion to Amend Neto suggests that he should only have to forfeit a portion of his property because the multifamily house he owned at 27-33 Blaine Street, Allston, Massachusetts, sits on property that represents two "lots" as shown on the Boston Plan of November 1889 and is taxed as two "lots" for purposes of property taxes.  Neto fails, however, even to suggest a legal mechanism for dividing the property at this juncture.

1.      The Forfeited Property Was Properly Treated  As  Single Parcel

A review of Neto's submissions discloses the following facts, which are fatal to his claim:  First, Neto obtained the Blaine Street property by a single deed of conveyance; and

Second, the property has long been under unitary ownership (see, e.g., inspection certificates dated 1983). Moreover, as reflected in the photograph which was introduced at trial, there is only one building on the Blaine Street property. It is indisputably a single building which covers almost the entire parcel.

As against this evidence, Neto proffers that the developers' plan of 1889 shows the property as two lots and that the property has been recorded that way in the City of Boston's property tax registers. Nowhere does he suggest that he could legally subdivide the property or that either parcel could be sold independently. On the contrary, the claimant submissions of the mortgage holders on the property plainly reflect that the property has been pledged, as a single unit, as security for the mortgage loans.

While there is some division among the Courts of Appeals as to the standard for determining the unit of real property subject to forfeiture, under any standard Neto's present claim fails. See United States v. Two Parcels, 31 F.3d 35, 40-41 (2d Cir. 1994) (reviewing cases, primarily under drug forfeiture statutes, involving disputes about the unit of property subject to forfeiture). Most circuits look to the instrument (or instruments) by which an interest to be forfeited was acquired. See, e.g., United States v. Bieri, 21 F.3d 819, 824 (8th Cir. 1994) ("tracts of real property subject to forfeiture . . . are defined by the instruments and documents that created the defendant's interest in the property") (internal quotations omitted); United States v. Smith, 966 F.2d 1045, 1053-54 (6th Cir. 1992); United States v. Santoro, 866 F.2d 1538, 1543 (4th Cir. 1989) (tract of real estate "determined from the duly recorded instruments and documents filed in the county offices where the defendant property is located"). Among the cases reflecting the majority approach, the Santoro decision is particularly apt. In Santoro the

2

Fourth Circuit rejected a claim, much like Neto's, that only a portion of the subject property should be forfeited since the property was taxed as two separate parcels. 866 F.2d at 1545.

The First Circuit appears to be in line with the majority approach. In United States v. One Parcel of Real Property, 960 F.2d 200, 205-06 (1st Cir. 1992), the court addressed the issue in the context of a motion for summary judgment in a civil in rem forfeiture case under 21 U.S.C. §881. In that case, the owner of a parcel contended that the government's forfeiture should not extend to a portion of his property as to which there was an ongoing title dispute. The First Circuit rejected this argument, noting, "we believe that the government may treat as unitary, for purposes of an initial seizure warrant, any tract over which an owner or group or owners exercises dominion and treats as his/her/their own." 960 F.2d at 205. In particular, the Court endorsed the practice, which the United States followed in the matter at bar, of describing a property by tracking its designation in local land records:

> Furthermore, we think it is beyond serious question that, for purposes of showing probable cause, the government is justified in describing a seized tract in the usual and customary manner reflected in the local land records. *See, e.g., United States v. Santoro,* 866 F.2d 1538, 1543 (4th Cir.1989).

960 F.2d at 205-06. As noted above, the Santoro decision, which the First Circuit cites in support of its holding, explicitly rejects the "two-parcels for tax purposes" theory that Neto advances in this case. See also United States v. Derman, 211 F.3d 175, 184 (1st Cir. 2000), superseded by statute on other grounds ("The questions of whether all of Derman's property or just some parcels should have been subject to forfeiture . . . were for the judge, not for the jury, to answer.") (citing cases reflecting rule that instrument of conveyance defines parameters for forfeiture) (citations omitted).

Another approach to the issue, adopted by the Second Circuit in Two Parcels, is more

intricate, but ultimately offers no support for Neto's motion. In <u>Two Parcels</u> the Second Circuit adopted a multi-factor balancing standard for determining whether a tract constitutes a single forfeitable piece of property. 31 F.3d at 41. Under this standard a court would not give dispositive weight to the deed by which the forfeitable interest was acquired, and would consider such matters as "zoning and planning requirements, how long ago the property was last held in separate ownership, the nature of the property and the manner in which the property is used." <u>Id.</u> Even under the Second Circuit's standard, however, a property is to be treated as a single unit when it is "unreasonable or physically impossible to treat the property separately." <u>Id.</u>. In particular -- and fatally for Neto's claim -- the Second Circuit noted that "An example of physical impossibility would be where a building is constructed in such a way as to straddle two separately described parcels." <u>Id.</u> This, of course, is precisely the situation in the matter at bar.

In short, under any recognized legal standard, Neto's interest in the Blaine Street property is a unitary interest, subject to forfeiture as such.

    2.    <u>Forfeiture Of Neto's Interest In The Allston Property Was Mandatory Once The Jury Returned Its Special Verdict.</u>

Not only is Neto's position without merit, it is also untimely. It simply makes no sense to allow Neto to raise, at this late date, a challenge to the description of the property as to which the jury – who heard the matter at Neto's request – has already rendered its verdict. While it is the Court that decides the legal questions regarding what constitutes a single property for purposes of forfeiture, it is the jury that decides whether that property was used to facilitate the offense of conviction. By waiting until the moment of sentencing, approximately 7 months after the question was submitted to the jury to raise his current claims, Neto ignores that the jury has already spoken and, in keeping with the instructions it was given, has returned a verdict as to the

entire property.[1]

As required by Rule 32.2(a), the indictment in this case provided explicit notice to Neto that the government would seek forfeiture of certain property, and specifically identified the Blaine Street property as subject to forfeiture pursuant to 18 U.S.C. §986(a)(6)(A). The indictment describes the property as follows:

> the real property located at 27-33 Blaine Street, Allston, Massachusetts, more specifically described in the deed recorded in the Suffolk County Registry of Deeds, Book 29514, Page 317.

Superseding Indictment, ¶ 42. Neto elected to have the jury determine whether the government had established the requisite nexus between the Allston property and the harboring offense. See Fed.R.Crim.P. 32.2(b)(4). The jury returned a special verdict finding that "[t]he real property located at 27, 29, 31, 33 Blaine Street, Allston, Massachusetts" was "used to facilitate, or was intended to be used to facilitate, the commission of the violation charged in Count 1 of the indictment." See Docket No. 54.

Based on the jury's verdict, the United States requested that the Court enter a Preliminary Order of Forfeiture, pursuant to Rule 32.2(b)(2). See Docket No. 56. Neto opposed the Motion for Preliminary Order of Forfeiture on the grounds that there was insufficient evidence for the jury to have convicted of harboring an illegal alien at that location, and on that basis, that the

---

[1] Any ownership interest Neto had in the Allston property was terminated with the Preliminary Order of Forfeiture. See Docket No. 56; see also United States v. Pelullo, 178 F.3d 196, 202 (3d Cir. 1999) (defendant lacks standing to file a claim in the ancillary proceeding because by that time he no longer has any interest in the property). Nevertheless, because the Preliminary Order of Forfeiture does not become final as to Neto until sentencing, see Fed.R.Crim.P. 32.2(b)(3), the government has addressed Neto's challenge to the Final Order of Forfeiture as if it were a belated challenge to the Preliminary Order of Forfeiture.

Allston property was not subject to forfeiture. See Docket Nos. 52 and 58. The Court upheld Neto's conviction and endorsed the Preliminary Order of Forfeiture, forfeiting Neto's interest in the Allston property to the United States. See Docket No. 61; Docket No. 62, ¶ 1.

Rule 32.2(b)(2) requires that, if the court finds property is subject to forfeiture, "it must promptly enter a preliminary order of forfeiture." Where, as here, a jury has returned a special verdict of forfeiture, entry of a preliminary order of forfeiture is mandatory. See United States v. Neal, 2003 WL 24307070 (E.D. Va. 2003) (the court is not free to second-guess the jury's finding of forfeitability once the jury returns its special verdict; at that point, entry of a preliminary order of forfeiture is mandatory); United States v. Segal, 339 F. Supp. 2d 1039 (N.D. Ill. 2004) (defendant cannot ask the court to look behind the jury's special verdict to determine how it calculated the amount of proceeds subject to forfeiture; issue is only whether there is sufficient evidence to support the verdict); United States v. Prejean, 2006 WL 2414256, at *2 (E.D. La. 2006) (once the jury returns a forfeiture verdict, entry of the preliminary order of forfeiture is mandatory; thus the defendant is not entitled to another hearing before the order is entered).

Neto had notice and an opportunity to oppose the forfeiture of the Allston property. The forfeiture allegation was contained in the indictment, and after the jury returned a guilty verdict the Court instructed the jury regarding forfeiture and provided special verdict forms for the forfeiture verdict. Both the government and Neto had an opportunity to argue their positions on the forfeiture issue to the jury. The jury, as the finders of fact, found that the Blaine Street property was used to facilitate Neto's harboring offense. Neto, moreover, availed himself of the opportunity to challenge the sufficiency of the evidence and this Court has found that the

evidence was sufficient to sustain the jury's verdicts. It is simply too late in the day to re-visit the jury's verdict in light of a newly-concocted legal theory.

## CONCLUSION

Neto's current motion is without merit and untimely. It should be denied on that basis.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

dated: February 12, 2007

By: /s/ Paul G. Levenson
PAUL G. LEVENSON
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

dated: February 12, 2007

/s/ Paul G. Levenson
PAUL G. LEVENSON